# Edward Martin v. Department of Employment Security

[417 A.2d 932]

No. 372-79

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and
Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed June 16, 1980

*Hoff, Wilson & Powell, P.C.*, Burlington, for Plaintiff.

*Brooke Pearson,* Montpelier, for Defendant.

*Robert B. Hemley* of *Gravel, Shea & Wright, Ltd.,* Burlington, and *Gary S. Starr* of *Siegel, O'Connor & Kainen, P.C.,* Hartford, Conn., for amicus curiae Stanley Tools.

**Barney, C.J.** By decision of the Employment Security Board, the payment of any unemployment compensation to the plaintiff was deferred until he had earned wages in excess of six times his weekly benefit. This disqualification was imposed based on a determination that the plaintiff had refused an offer of suitable work. 21 V.S.A. § 1344(a) (2) (C). A majority of the Board, with the chairman dissenting, agreed with the finding of refusal made by both the claims examiner and the referee.

The plaintiff had been employed at the Stanley Tools' Eagle Square plant since September, 1977. He worked on a variety of what are designated as "grade 13" jobs. This job grade does not require any particular prior experience; the training is done on the job. The grade classification applies to many types of work, and an employee who has worked at one such job cannot be expected to perform any other job at that level without additional training.

In December, 1978, the plaintiff moved up to a grade 14 job, polishing and buffing carpenter squares. The pay arrangements on these graded jobs provide a training period during which the employee gets the grade base wage rate irrespective of production. As his proficiency increases it is possible for him to be paid up to 25% in excess of the base wage rate, as a productivity increase. By April, 1979, he was receiving an average of $5.13 per hour in a job that had a base rate of $4.55 per hour.

On April 2, 1979, the plaintiff was laid off for lack of work. He applied for unemployment benefits. Approximately two weeks later, on April 18, 1979, he was recalled by the employer and offered a grade 13 job. This offer was made under the terms of the union contract which gave reemployment rights on the basis of seniority. It provided that taking a lower grade job would not affect his right to claim his grade 14 job should it reopen.

The plaintiff refused the offer, and his disqualification was based on this refusal.

The grade 13 position was not one at which he had ever worked, although some aspects of it were consistent with his prior experiences. It involved the oiling and grinding of tri-squares. Its base wage rate was $4.36 per hour.

Having found these facts, the Board went further and made findings as to the plaintiff's probable success in rapidly earning 125% of the base rate, in view of his ability to do so in other grade 13 jobs which he had held. This would, potentially, put him at a rate of $5.45 per hour. The Board also mentioned, but gave no weight to, plaintiff's contention that the existence of a controversy as to a quality standard would preclude any productivity increase based on one aspect of the job. The Board was satisfied that the plaintiff, if he had taken the job, would have been retroactively reimbursed "had his performance in the interim surpassed the standards ultimately set."

There was evidence put forward that tended to refute these sanguine expectations of the Board. In its findings it recited evidence that the plaintiff had determined from fellow employees that it took a long time to learn the job and merely "make the rate" on it.

■■ To qualify for benefits, the plaintiff was required to be available and able to work. 21 V.S.A. § 1343(a)(3). Availability encompasses a requirement that the work be "suitable." 21 V.S.A. § 1344(a)(2)(C). Subsection (a)(2)(D) of that statute lists the proper concerns for measuring "suitability." Relevant to this case are "prior training, his experience and prior earnings, [and] his length of unemployment and prospects for securing local work in his customary occupation." The plaintiff's availability must be realistic, it cannot be so circumscribed that the plaintiff refuses work which meets the statutory measure of suitability. *In re Platt*, 130 Vt. 329, 333, 292 A.2d 822, 825 (1972). The plaintiff has the burden of establishing that the work offered is not suitable. See *Lanctot v. Department of Employment Security*, 134 Vt. 281, 283, 356 A.2d 531, 533 (1976).

■ However, having in mind the beneficial and remedial purposes of this law, no person should be denied benefits un-

less, based on the statutory provisions, the requirement of denial of benefits is clearly established. *Jenkins* v. *Department of Employment Security*, 135 Vt. 210, 212, 373 A.2d 533, 534 (1977). Refusal to accept unsuitable employment is not a disqualification from benefits. *Wallace* v. *Department of Employment Security*, 134 Vt. 513, 514, 365 A.2d 517, 519 (1976).

A claimant is not required to accept employment involving substantially less skill or at substantially lower pay in order to remain eligible for benefits, although the length of the period of unemployment may temper the measure of "suitability." *In re Potvin*, 132 Vt. 14, 18, 313 A.2d 25, 28 (1973). This is reflected in the language of 21 V.S.A. § 1344(a) (2) (D) already quoted, and in the generally recognized goal of the unemployment compensation system to maximize utilization of a worker's skill and experience. *In re Potvin, supra.*

Although the wage differential involved in this case is not as extreme as in the *Potvin* case, it is substantial, a loss of skills is involved, and the offer came within a very short time of lay-off. The majority of the Board avoided the wage reduction issue by speculating on the plaintiff's prospects of success in a new and untried position. These expectations are not facts. The case must be dealt with on the basis of the existing circumstances as established by the evidence. Without the aid of the assumptions made by the majority of the Board, the denial of benefits cannot stand.

*Judgment reversed and cause remanded to the Employment Security Board for the computation of appropriate benefits..*